**WESTERN BOAT BLDG. CO. et al. v. O'LEARY et al.**

No. 13091.

United States Court of Appeals
Ninth Circuit.

July 8, 1952.

---

Bogle, Bogle & Gates, Edw. S. Franklin, Seattle, Wash., for appellant.

Smith Troy, Atty. Gen. of Washington, Bernard A. Johnson, Asst. Atty. Gen. for State of Washington, amici curiae.

J. Charles Dennis, U. S. Atty., Seattle, Wash., Guy Dovell, Asst. U. S. Atty., Tacoma, Wash. (William S. Tyson, Solicitor, Ward E. Boote, Asst. Solicitor, Herbert P. Miller, James E. Hughes, Attys., U. S. Department of Labor, Washington, D. C., of counsel), for appellees.

Before MATHEWS, HEALY and BONE, Circuit Judges.

BONE, Circuit Judge.

This is an appeal from a judgment of the District Court dismissing appellants' petition for an order enjoining enforcement of a compensation award made by the Deputy Commissioner to appellee Robert Markovich under the Longshoremen's & Harbor Workers' Act, 33 U.S.C.A. § 901 et seq.

On October 18, 1950, Markovich was injured while performing service as a fastener in work incidental to the repair of the tugboat El Sol which was then located on a marine railway at the yard of his employer, Western Boat Building Company, in Tacoma, Washington. While walking alongside a lifeboat on the upper side of the ship, he lost his balance, and fell over the side, a distance of about forty feet. The marine railway upon which the El Sol was located is about 150 feet long and the lower portion thereof extends into the water. While thus undergoing repairs, the stern of the vessel was partially submerged in the waters of Puget Sound at high tide. It is not disputed that the waters of Puget Sound are navigable.

Shortly after his injury, appellee-Markovich filed a claim for compensation with the Department of Labor and Industries of the State of Washington. The claim was allowed November 14, 1950, but was being further investigated. Monthly payments to Markovich began December 15, 1950, and three such monthly awards of $75.00 each had been paid at the time of the trial.

On January 10, 1951, while receiving compensation from the State of Washington, appellee-Markovich filed a claim for benefits with appellee-Deputy Commissioner, under the Longshoremen's and Harbor Workers' Act, and, after hearing, an order was entered making an award to him.

The appellant-employer contends that the Deputy Commissioner was without jurisdiction to make this award since appellee's injury (1) did not occur on navigable waters and (2) compensation therefor was and could be validly provided by the Compensation Act of the State of Washington, RCW 51.04.010 et seq. It will be observed that Section 3 of the Longshoremen's Act provides that compensation shall be payable in respect of disability or death of an employee, "but only if the disability or death results from an injury occurring upon navigable waters of the United States (including any dry dock) and if recovery for the disability or death through Workmen's Compensation proceedings may not validly be provided by State law."

At the outset, therefore, we must determine whether the disability of appellee resulted "from an injury occurring upon the navigable waters of the United States (including any dry dock)." If not, the Federal legislation is inapplicable.

Although the Deputy Commissioner found that the stern of the vessel was partially submerged in navigable waters at high tide while the vessel was undergoing repair on the marine railway, we deem it unnecessary to decide whether Federal jurisdiction may properly be tied to such an adventitious circumstance. Rather the legislative history of the Federal Act compels us to conclude that a marine railway *is* included within the statutory parenthetical expression "any dry dock," and that, therefore, the first prerequisite to Federal jurisdiction is present. Viewing the Act in the environment of its enactment, our reaction is the same as that of the Fifth Circuit when

it was presented with this very question in Maryland Casualty Co. v. Lawson, 5 Cir., 1939, 101 F.2d 732, 733. It said:

"Appellants contend that a marine railway is not a dry dock within the meaning of the law, relying upon Norton v. Vesta Coal Co., 3 Cir., 63 F.2d 165, and Rohlfs v. Dept. of Labor and Industries, 190 Wash. 566, 69 P.2d 817, which are in point but not controlling. We held to the contrary in Continental Casualty Co. v. Lawson, 5 Cir., 64 F. 2d 802, and decided that a marine railway is to be considered a dry dock within the meaning of the statute. Our decision finds support in Butler v. Robins Dry Dock & Repair Co., 240 N.Y. 23, 147 N.E. 235, in which it was held that a workman injured while engaged in repairing a vessel in a graving dock was constructively on navigable waters when the accident occurred.

\*   \*   \*   \*   \*   \*

"In enacting the Longshoremen's and Harbor Workers' Compensation Act is was clearly the intention of Congress to give the same rights and remedies to those employed in work of a maritime nature as are enjoyed by other workers under the provisions of state workmen's compensation acts. The act is to be liberally construed to effect its purpose. Baltimore & Philadelphia Steamboat Co. v. Norton, 284 U.S. 408, 409, 52 S.Ct. 187, 76 L.Ed. 366.

"In construing the act we are not bound by technical definitions but must interpret it by giving to the words used their ordinary meaning. Courts of admiralty may take notice of terms in general use in maritime affairs. Brown v. Piper, 91 U.S. 37, 23 L.Ed. 200. In nautical parlance 'dry dock,' 'floating dock' and 'marine railway' are interchangeable terms. Necessarily, all are located on navigable waters and used for exactly the same purposes, i. e., to raise a ship out of the water to permit examination and repairs to her hull which are impossible while she is afloat. A ship's master speaks of 'dry docking' his vessel regardless of which method

is to be used. That the words have a common meaning is illustrated by this case. Although operating a marine railway, appellant calls itself a dry dock.

"There are few dry docks, technically considered, in the United States. Floating docks or marine railways or both are to be found at every seaport. *It must be presumed that Congress intended to protect the great majority of laborers employed on floating docks and marine railways as well as the comparatively few workmen employed on what are to be technically considered dry docks.* We entertain no doubt that in extending the law to cover 'any dry dock' Congress intended to include marine railways. Cf. International Stevedoring Co. v. Haverty, 272 U.S. 50, 47 S.Ct. 19, 71 L.Ed. 157, and Warner v. Goltra, 293 U.S. 155, 55 S.Ct. 46, 79 L.Ed. 254." (Emphasis supplied.)

Appellants contend that the Washington Workmen's Compensation Act provided the exclusive remedy for compensation to Markovich. This argument necessarily implies that the payment of compensation under the state law ousts the federal jurisdiction. With such a statement we cannot agree. The record does not clearly indicate whether or not there has been a specific adjudication by the Washington Commission upon the issue whether the Federal or State compensation law was applicable, and appellee-Markovich vigorously contends that the three compensation payments made to him by the State of Washington were voluntary in nature. Even if it be assumed, *arguendo*, however, that the Washington Commission had adjudicated and granted the award under the state act, we do not regard such action as constituting a bar to claimant's rights under the federal law.

In the recently decided case of Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968, 1951, an appeal was taken from a judgment of the district court refusing to enjoin the enforcement of a compensation award made by the Deputy Commissioner under the Longshoremen's and Harbor Workers'

Compensation Act, 33 U.S.C.A. § 901 et seq., to the widow of a welder who was fatally injured in repairing the gate of a graving dry dock. There (as here) it was specifically urged that a prior award of compensation by the Industrial Commission of Virginia invalidated the award made by the Deputy Commissioner. In rejecting such an argument, and affirming the judgment of the district court, Judge Soper, at page 971 of 192 F.2d, stated:

"It is true that the Virginia Commission accepted jurisdiction in this instance and awarded compensation, and that the courts have been inclined in doubtful cases to uphold awards by state as well as by federal administrative authority; Davis v. Department of Labor and Industries, 317 U.S. 249, 250, 63 S.Ct. 225, 87 L.Ed. 246; but in the Pittman case awards have been made by both authorities and it is incumbent upon this court to decide between them. We hold that the case falls within the purview of the federal statute and outside the permissible scope of the state enactment."

Payments theretofore made for compensation under the award of the state commission were merely credited upon the award of the Deputy Commissioner. See also Massachusetts Bonding & Insurance Co. v. Lawson, 5 Cir., 1945, 149 F.2d 853; Cf. Gahagan Construction Corporation v. Armao, 1 Cir., 1948, 165 F.2d 301; Kibadeaux v. Standard Dredging Co., 5 Cir., 81 F.2d 670, certiorari denied 299 U.S. 549, 57 S.Ct. 12, 81 L.Ed. 404.

▮▮▮ Appellants tell us that the lower court erred in failing to accord a *de novo* hearing on the question of whether Markovich was injured on navigable waters, their contention particularly being that "this is a jurisdictional issue under the case of Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 294, 76 L.Ed. 598, which the district court must decide anew." The Supreme Court in Crowell v. Benson approved the provision of the Longshoremen's and Harbor Workers' Act making the findings of the deputy commissioner final if supported by evidence and within the scope of his authority, but held that the district court did not err in permitting a trial *de novo* on the issue of employment. The Court stated that:

"A different question is presented where the determinations of fact are fundamental or 'jurisdictional,' in the sense that their existence is a condition precedent to the operation of the statutory scheme. These fundamental requirements are that the injury occurs upon the navigable waters of the United States, and that the relation of master and servant exists. These conditions are indispensable to the application of the statute, not only because the Congress has so provided explicitly (section 3), but also because the power of the Congress to enact the legislation turns upon the existence of these conditions.

\* \* \* \* \* \*

"It is the question whether the Congress may substitute for constitutional courts, in which the judicial power of the United States is vested, an administrative agency—in this instance a single deputy commissioner—for the final determination of the existence of the facts upon which the enforcement of the constitutional rights of the citizen depend. \* \* \* That would be to sap the judicial power as it exists under the Federal Constitution".

We confess an inability to comprehend the difference between these different varieties of fact questions. Later decisions do not provide any formula for ascertaining when a fact becomes "jurisdictional" or "fundamental," nor have the commentators agreed on the proper categorization.[1] As aptly stated by Mr. Justice Frankfurter: "The opinions in Crowell v. Benson \* \* \* and the casuistries to which they have given rise bear unedifying testimony of the morass into which one is led in working out problems of judicial review over administrative decisions by loose talk about jurisdiction." City of Yonkers v. United States, 1944, 320 U.S. 685, 64 S.Ct. 327, 333,

---

1. Davis on Administrative Law, 1951, p. 920.

88 L.Ed. 400. Whether, as at least one eminent authority has concluded,[2] the ill-starred rule of Crowell v. Benson is dead, though not explicitly overruled, need not here be decided.

In paragraph IV of their "Petition for Injunction," appellants clearly indicate that there is no dispute concerning the facts as to which they seek *de novo* review: "* * * That while working aboard the tug El Sol which had been pulled out of the navigable waters * * * by plaintiff's marine railway, the said Markovich fell from said tug to the shore below * * *." It will thus be seen that appellants allege that the injury occurred while Markovich was employed on a ship resting on a marine railway. That a marine railway is equivalent to a dry dock within the meaning of the Longshoremen's and Harbor Workers' Act we have heretofore noted. There is, therefore, no issue present to be judicially reviewed.

We do not understand Crowell v. Benson to afford *a trial de novo as a matter of right* under circumstances where there is no real issue of fact presented. See Luckenbach S. S. Co., Inc. v. Lowe, D.C.1951, 96 F. Supp. 918, 919. If however, the true rule is contrary to our impression, we simply refuse to invoke it where (as here) no worthwhile purpose would be served thereby. To do so would be to adhere to the superfluous and breed procrastination. Cf. Mr. Justice Frankfurter's concurring opinion in Estep v. United States, 327 U.S. 114, 142, 66 S.Ct. 423, 90 L.Ed. 567.

■■ We have already determined that the injury to claimant occurred upon navigable waters or upon a dry dock, within the scope of the Federal Act. But appellants urge that, even though this be true, claimant's employment and injuries "were purely matters of local concern and unconnected with navigation and essentially non-maritime in character * * *." The latter part of this assertion is so lacking in substance that we summarily reject it at the outset. Suffice it to say that we think the employment of Markovich was *typically* maritime in nature. See North Pacific Steamship Co.

v. Hall Bros. Co., 249 U.S. 119, 39 S.Ct. 221, 63 L.Ed. 510; John Baizley Iron Works v. Span, 281 U.S. 222, 50 S.Ct. 306, 74 L.Ed. 819; Travelers Insurance Co. v. McManigal, 4 Cir., 139 F.2d 949; Cf. Parker v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; Cf. In re Third Avenue Transit Corp., 2 Cir., 192 F.2d 971.

Appellants suggest that the instant facts are strikingly similar to those of Alaska Packers Ass'n v. Industrial Accident Commission of the State of California, 276 U.S. 467, 48 S.Ct. 346, 72 L.Ed. 656, and urge that the "local concern" language there used by the court in permitting the State Compensation Act to apply is equally applicable here. The essentials of appellants' position are said to be embraced in these words: "When injured, certainly he was not engaged in any work so directly connected with navigation and commerce that to permit the rights of the parties to be controlled by the local law would interfere with the essential uniformity of the general maritime law. The work was really local in character."

We fail to find any such "striking similarity" in factual patterns between case at bar and Alaska Packers. There, while standing on the land in Alaska, claimant endeavored to push into navigable water a stranded boat, 26 feet long, and in so doing sustained physical injury. At the time of the accident, the fishing season was over, the nets had been removed, and the immediate purpose was to float the boat to a dock nearby so that it might be lifted therefrom and stored for the winter, as was the usual practice. Although the claimant was employed as a fisherman in season, his off-season duties were those of a general worker in and around a cannery. Such employment might well be said to be non-maritime and not within exclusive admiralty jurisdiction, but the facts there are a far cry from those presented to us now. Accordingly the rule there evoked has no place in the decision of the instant controversy.

A convenient starting point for the brief historical review of the law applicable to facts such as these is Southern Pacific Co.

2. Ibid., p. 918.

v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 529, 61 L.Ed. 1086, about which voluminous literature has appeared and at which multifarious commentary has been directed. Mr. Justice McReynolds, speaking for the majority of the Court, stated that a state workmen's compensation act could not be applied to a stevedore fatally injured on board a ship in navigable water for to do so would destroy the uniformity and harmony "in respect to maritime matters which the Constitution was designed to establish". The harsh results of the Jensen decision on large numbers of maritime workers prompted Congress to bestow upon such workers the benefits of state workmen's compensation, but such legislation was twice nullified by the Supreme Court upon Constitutional grounds. In 1927, Congress enacted the Longshoremen's and Harbor Workers' Compensation Act which, as we have seen, provided compensation "only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

Some five years after the Jensen decision, however, in 1922, an exception was recognized in cases where the matter was maritime but local in character, this exception being thereafter referred to as the so-called "local concern" doctrine. To such situations, if the work of the claimant was only incidentally related to admiralty, the state compensation acts were allowed to apply.

This local concern doctrine was in vogue until Parker v. Motor Boat Sales, 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184, where, to an employment situation whose maritime aspects were of an obviously incidental nature, the Supreme Court refused to apply the "local concern" rule and held that the death of the claimant-janitor fell within the scope of the Longshoremen's Act and not within the purview of the state compensation law.

It was upon such an uncertain foundation that Davis v. Department of Labor and Industries, 1942, 317 U.S. 249, 256, 63 S.Ct. 225, 229, 87 L.Ed. 246, was superimposed. Mr. Justice Black, speaking for the majority, espoused a new formula when he stated:

"There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act."

The above noted pronouncement of the Court was undoubtedly intended to provide solace to those injured workmen who, theretofore, had been belatedly informed that their choice of remedy was inappropriate, and that the frustrating task of renewing their claim in another forum must be undertaken before recompense might be had. But for the legal marksman whose client had suffered injury the "twilight zone" doctrine [3] fostered by the Davis decision may have made more obscure the forum at which he must aim.

Moores' Case, 323 Mass. 162, 80 N.E.2d 478, 480, Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417, came before the Supreme Court of Massachusetts in 1948. The claimant was assisting a crane operator in moving repair materials from dock to ship, the vessel being in a floating dry dock at the time claimant was injured. Following an award to Moores under the state act, the employer appealed, contending that the case fell within the exclusive federal jurisdiction. In affirming the lower state court, Chief Justice Qua, speaking for the Massachusetts high court, had this to say of the Davis decision, upon which his decision in Moores was based:

"It would seem, therefore, that although apparently some heed must still be paid to the line between State and Federal authority as laid down in the cases following the Jensen case, the most important question has now become the fixing of the boundaries of

3. See "The Twilight Zone—A New Theory of Compensation" by Franklin C. Latcham, Vol. XIX, No. 1, Wash.L.Rev. p. 32, (1944).

the new 'twilight zone,' and for this the case gives us no rule or test other than the indefinable and subjective test of doubt. Mr. Justice Frankfurter says that 'Theoretic illogic is inevitable so long as the employee \* \* \* is permitted to recover' at his choice under either act. 317 U.S. at page 259, 63 S.Ct. at page 230. Probably therefore our proper course is not to attempt to reason the matter through and to reconcile previous authorities, or to preserve fine lines of distinction, but rather simply to recognize the futility of attempting to reason logically about 'illogic,' and to regard the Davis case as intended to be a revolutionary decision deemed necessary to escape an intolerable situation and as designed to include within a wide circle of doubt all water front cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way, even though a careful examination of numerous previous decisions might disclose an apparent weight of authority one way or the other."

On appeal to the United States Supreme Court, the Massachusetts decision was affirmed *per curiam*, causing considerable speculation among the commentators as to the true meaning of the Davis case which it interpreted.[4]

Whether or not the Supreme Court has adopted, in toto, the interpretation of Davis v. Department of Labor and Industries, supra, attributed to it by the Massachusetts court, can only be surmised. It is suggested by appellants that Baskin v. Industrial Accident Commission, 89 Cal.App.2d 632, 201 P.2d 549 affords a basis for such conjecture. There, petitioner was employed as a material man for Kaiser Shipyard. During more than two and one-half years in this capacity, his work had been entirely on shore save for two or three short tours on board ship. At the time of his injury, he, with other employees, had been sent on board the vessel which was tied at the shipyard wharf in San Francisco Bay to move

certain planks from one hold to another, because the crane's boom could not reach out far enough to accomplish this task. While engaged on board the vessel in moving the planks, the petitioner slipped and was injured. On these facts, the California court concluded that the case was not within the "twilight zone" established by Davis v. Department of Labor and Industries, supra, and affirmed the state board's order dismissing petitioner's application for state compensation on the ground that the case was exclusively within federal jurisdiction. On certiorari to the Supreme Court, the Baskin judgment was vacated and the cause remanded to the California court for reconsideration "in the light of Bethlehem Steel Co. v. Moores, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417, and Davis v. Department of Labor and Industries, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246 \* \* \*."

On remand, 217 P.2d 733, 738, the California court observed that "Our clear duty is to reverse our former ho'ding in this [Baskin] case, on the authority of Bethlehem Steel Co. v. Moores, supra, and Davis v. Department of Labor, etc., supra," and accordingly annulled the order of the Commission dismissing petitioner's application for state compensation. This decision was affirmed by the Supreme Court in 338 U.S. 854, 70 S.Ct. 99, 94 L.Ed. 523.

The decisions in the Moores and Baskin cases, say appellants, indicate that the Supreme Court has "greatly broadened the rule of the Davis case," and it is their contention that the Davis "twilight zone" doctrine, as subsequently enlarged, is here controlling.

We agree that Davis is decisive, but we conclude that it dictates a result contrary to that for which appellants here contend. We perceive a vital distinction between the instant facts and those of the Davis, Moores, and Baskin cases. In none of the three had the federal authorities taken any action under the Longshoremen's Act. In the instant action, however, the Deputy Commissioner has, upon hearing, assumed jurisdiction and made an award under the Federal Act.

4. Vol. 2, No. 3, Stanford Law Review, pp. 536, 542–543 (1950).

416

That such action by the Deputy Commissioner under the Federal Act is all important is made clear by the following language of Mr. Justice Black, for the majority in the Davis case, supra, 317 U.S. at page 256, 63 S.Ct. at page 229, which appellants would have us overlook:

"Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. There we are aided by the provision of the federal act, 33 U.S.C. § 920, 33 U.S.C. A. § 920, which provides that in proceedings under that act, jurisdiction is to be 'presumed, in the absence of substantial evidence to the contrary.' Fact findings of the agency, where supported by the evidence, are made final. Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and *will be rejected only in cases of apparent error.*" (Emphasis supplied.)

We find no such apparent error in the judgment of the district court and that judgment is affirmed.