Harry B. Frank, J.
The defendant’s first affirmative defense pleaded that the accident alleged in the complaint and the nature of plaintiff’s employment bring him under the Longshoremen’s and Harbor Workers’ Compensation Act (U. S. Code, tit. 33, § 901 et seq.), and that said act provides the exclusive remedy for the plaintiff. At the end of the entire case and after motions to dismiss and for a directed verdict had been denied, the court on its own motion struck out the defendant’s first affirmative defense, as aforesaid, and ruled as a matter of law, taking the question away from the jury, that the plaintiff did not come under the Longshoremen’s and Harbor Workers’ Act, but that he was a seaman entitled to bring this action under the Jones Act (IT. S. Code, tit. 46, § 688). The court’s ruling, as stated upon the record, is as follows:
*423 The court determines as a matter of law that the plaintiff Bryer is a master or member of the crew of a vessel so that he is excluded from coverage under the Longshoremen’s and Harbor Workers’ Compensation Act, and is a seaman entitled to maintain this action under the Jones Act and general maritime law.
‘' There are cases where the nature of the employment is such that any reasonable person must conclude that the person involved is a member of the crew. Such is the case of Norton v. Warner Co. [321 U. S. 565] (Smrekar v. Bay & Riv. Navigation Co., 69 Cal. App. 2d 654, 657.) In the Norton case, in setting aside the award of the deputy commissioner, the Supreme Court of the United States held as a matter of law that, under the facts found relating to the plaintiff’s duties, he was a member of the crew of a vessel and excluded from the Longshoremen’s Act.
The Norton case dealt, as does the case at bar, with a sole employee aboard a barge. “ His duties consisted of taking general care of the barge.” (Norton v. Warner Co., supra, p. 567.) The court then delineated his specific duties and contact with the vessel and found that he had no duties in connection with the handling of cargo and no shore duties. While in the case at bar there is some evidence that the plaintiff did inspect the cargo when loading and discharging to see whether the cargo was correct and to see that it was properly stowed so that it would not shift to the detriment of the vessel, I find these duties are consistent with those of the master of any vessel, who would either do these things himself or delegate such duties to another member of his crew.
In excluding this plaintiff from the Longshoremen’s Act, this court does so following the direction of the Supreme Court in the Norton case where it was held that to do otherwise would bring “ within the Act a group of workers whom we do not believe Congress intended to include.” (P. 569.) That court quoted the Senate report which makes it clear that “ ‘ The purpose of this bill is to provide for compensation, in the stead of liability, for a class of employees commonly known as “ longshoremen. ’ ’ These men are mainly employed in loading, unloading, refitting, and repairing ships.’ ” (See Norton v. Warner Co., supra, pp. 569-570.)
The Supreme Court in the Norton case did not overrule its prior decision in the South Chicago Co. v. Bassett case (309 U. S. 251) which is relied upon here by counsel for the defendant, but merely distinguished the nature of the work done by the *424 two employees. In the Norton case the court again points (p. 571) out that the word “ ‘ crew ’ ” “ does not have ‘ an absolutely unvarying legal significance ’ ” and reasserts (p. 572) the statement made in the Bassett case “ that the term crew ’ embraced those ‘ who are naturally and primarily on board ’ the vessel to aid in her navigation. ’ ” It, however, goes on to expand its meaning and states that “ navigation is not limited to ‘ putting over the helm. ’ It also embraces duties essential for other purposes of the vessel. Certainly members of the crew are not confined to those who can ‘ hand, reef and steer.’ Judge Hough pointed out in The Buena Ventura, 243 F. 797, 799, that ‘ every one is entitled to the privilege of a seaman who, like seamen, at all times contributes to the labors about the operation and welfare of the ship when she is upon a. voyage. ’ ” (Norton v. Warner Co., supra, p. 572.)
The court again notes that the purpose of the Longshoremen’s and Harbor Workers’ Act was to provide compensation for those who “ ‘ are mainly employed in loading, unloading, refitting, and repairing ships. ’ ” (Supra, p. 572.) Busin’s permanent attachment to the vessel is also stressed.
In the case at bar, the evidence clearly indicates, that the plaintiff Bryer was attached to this barge for. over one year, and while he did not sleep aboard the vessel, his duties brought him to the vessel from eight to five every day, with an hour off for lunch, that he was in that manner attached to this ship and that on those occasions when the ship was in navigation his attendance was required at all times until the ship reached its point of destination, and that he was aboard five or six times at night and many times until two or three o’clock in the morning.
There are many points of contact in comparing the specific duties of plaintiff Bryer with those of Busin in the Norton case, but more important the real test of the Norton case, and also the Bassett case (809 IT. S. 251, supra), is met in that the plaintiff was naturally and primarily on board the vessel to take care of her and to aid in her navigation. The few elements of difference, in the court’s opinion, in no way lessen plaintiff’s primary concern with the welfare and navigation of the vessel. It would be defeating the purpose of the Norton decision to find that only an employee performing each of the specific duties set forth in that case can be held to be “ ‘ a member of the crew ’ ”. (Norton v. Warner Co., 321 U. S. 565, 571, supra.) That court itself indicated that different duties might be assumed and yet fall within the proper work of a “ seaman *425 The real meaning of the Norton decision (p. 572) is the holding that the term ‘' ‘ crew ’ ’ ’ embraces those ‘ ‘ ‘ who are naturally and primarily on board ’ the vessel ‘ to aid in her navigation ’ ” and the broad interpretation to be applied to that term. And, further, that the purpose of the Longshoremen’s and Harbor Workers’ Compensation Act was to provide compensation for those who “ ‘ are mainly employed in loading, unloading, refitting, and repairing ships. ’ ” (Supra, p. 570.)
In the case at bar, the evidence produced clearly and overwhelmingly indicates that the plaintiff Bryer was primarily identified with the barge on which he was employed rather than the cargo. He was the sole employee aboard the barge, and had been steadily employed upon the same barge for over a year up to the time of the accident, remaining aboard overnight on some occasions when the vessel was in tow. He performed all the necessary duties incident to the welfare of the vessel. He inspected, tended and handled the lines, both at dock and while in tow, he made inspections of the barge to ascertain damage, he pumped water leakage and in the winter scraped ice and snow from the decks and in general saw to the security and welfare of the vessel. It is true that he supervised the loading of cargo, but he in no way himself handled or stowed that cargo. This supervisory position on his part, however, related primarily to the vessel rather than to the cargo because it was largely for the purpose of making sure that the cargo was properly stowed so that the barge would not be subjected to excessive strain or unequal loads and so be injured (see Tucker v. Norton, 56 F. Supp. 61, affd. sub nom. Tucker v. Branham, 151 F. 2d 96).
His primary duty had to do with maintaining the vessel in a seaworthy condition, in keeping it from sinking or being injured, and in performing all necessary duties incident to the navigation of the vessel. There is certainly no situation here such as existed in the Bassett Case (309 U. S. 251, supra) where the primary duty of the employee had to do with working directly with the cargo and being inactive when the vessel was in motion. In that case, other employees were charged with the duty of seeing to the navigation of the vessel. In the case at bar, Bryer was alone, serving as both captain and crew, and it was he who had the duty of maintaining the vessel while in navigation. Bryer’s attachment and importance to the vessel can most clearly be evidenced by asking what would have happened to the barge had Bryer not been present to aid in her *426 navigation. The barge would have been equivalent to a dead log at the mercy of the elements. It was Bryer alone who performed those essential duties which enabled this barge to engage in navigation. It was he who handled the lines while the barge was in tow and who was present to prevent any mishap at that time, and if some emergency did arise, he was present to deal with it and call for additional help if necessary. While his duties may have differed from those of a “ ‘ crew ’ ” on other types of vessels, they were different “ only as they were made so by the nature of the vessel and its navigational requirements.” (Norton v. Warner Co., 321 U. S. 565, 572, supra.)
As to the cargo, had he not been there to direct its loading, the vessel might well have been irreparably damaged by improper stowage. While he had certain minor duties with respect to bills of lading and other paper work, these were simply incidental to his employment and similar to the type of work with which every captain on a cargo vessel is involved or delegates to his other officers.
While it is true that Bryer did not live aboard the vessel, he had a permanent attachment to the vessel. He worked on the vessel day after day and when necessary he remained overnight when the vessel was in tow. His failure to live aboard the vessel was of no consequence (Daffin v. Pape, 170 F. 2d 622, 625; Early v. American Dredging Co., 101 F. Supp. 393, 395-396).
Upon the facts adduced at this trial it is impossible to find that Bryer was in any way a longshoreman as is envisioned by the Longshoremen’s and Harbor Workers’ Compensation Act. His sole contact with the cargo, as has been pointed out, was simply in furtherance of his duties in regard to the safety of the vessel, or those incidental duties which any captain assumes. His primary duties were without question to aid in the navigation of the vessel. His presence on board was essential to the operation of the vessel.
It has been held that the necessary requirements to hold one a ‘ member of the crew ’ ’ are that the vessel be in navigation, that there be a more or less permanent connection with the ship, and that the worker be aboard primarily to aid in navigation (Smerker v. Bay & Riv. Navigation Co., 69 Cal. App. 2d 654, 657, supra; Wilkes v. Mississippi Riv. Sand & Gravel Co., 202 F. 2d 383; Carumbo v. Cape Cod S. S. Co., 123 F. 2d 991, 995). The facts here clearly indicate that each of these requirements has been overwhelmingly met. To hold otherwise would be to frustrate the obvious intent and meaning of the Norton decision *427 (321U. S. 565, supra) and to ignore the history of Congressional intent regarding the liberal construction to be placed upon the Jones Act (see Carumbo v. Cape Cod S. S. Co., supra).
It should be noted that the great majority of cases on this point have been concerned with sustaining awards of the deputy commissioner. In those cases the Federal court in reviewing the administrative action below, could only determine whether there was evidence present to uphold the award. The question of weight of the evidence could not be considered. If there was any evidence at all the court was required to affirm the commissioner. Thus those cases cited by the defendant must be considered in relation to the limited function of the Federal court when reviewing such awards. Also, in most of those cases where the employee has been held to be within the purview of the statute, the primary nature of his duties was in fact directed toward working with the cargo, which is traditionally longshoremen’s work, an element that is not here present.