306 F.2d 369
 Leroy HOLLAND and P. J. Donovan, Deputy Commissioner, Seventh Compensation District, Bureau of Employees Compensation, United States Department of Labor, Appellants,
v.
HARRISON BROTHERS DRY DOCK AND REPAIR YARD, INC., and Aetna Insurance Company, Appellees.
 No. 19232.
 United States Court of Appeals Fifth Circuit.
 June 28, 1962.
 
 Morton Hollander, David L. Rose, Attys., Dept. of Justice, Washington, D. C., W. S. Murphy, Lucedale, Miss., Vernol R. Jansen, Jr., U. S. Atty., Mobile, Ala., William H. Orrick, Jr., Asst. Atty. Gen., Washington, D. C., for appellants.
 Alexander Foreman, Jr., Alton R. Brown, Jr., Foreman & Brown, Mobile, Ala., for appellee.
 Before HUTCHESON, WISDOM, and BELL, Circuit Judges.
 WISDOM, Circuit Judge.
 
 
 1
 Leroy Holland was employed by Harrison Brothers Dry Dock and Ship Repair Yard, Inc. to work in its shipyard at Mobile, Alabama. June 20, 1957, while lifting a heavy hose, he received a severe injury to his lower back. Although he attempted to return to work and to find other, lighter work after the injury, Holland's back continued to be painful, and he has not worked since February, 1958. In May, 1959, he filed this claim for compensation under the federal Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. After a full hearing, the Deputy Commissioner awarded Holland $5450 in accrued compensation and temporary total disability benefits of $40 a week, plus medical care. The appellee successfully challenged the award in the District Court on the ground that since the accident had occurred on land there was no jurisdiction for an award under the Longshoremen's Act. We reverse the action of the District Court and reinstate the award.
 
 
 2
 The facts are not disputed. Holland was employed by the appellee as a laborer. The day of the accident he was working on a large barge drawn up on a marine railway for repairs. Holland was cleaning sand off the sides of the barge when the foreman instructed him and two others to clear the area under the barge so that they could sand-blast the hull. A heavy twenty-foot length of six-inch rubber hose lay on the ground perpendicular to the barge. One end was under the barge and in the water. One of the men was under the barge. Holland was about five feet behind him and directly beneath the edge of the barge. The third worker stood five or six feet behind Holland. The hose proved too heavy for the three men to lift, and Holland was injured in the attempt. There is no allegation on either side that the injury resulted from negligence by any of the people involved.
 
 
 3
 The day after the accident Holland informed his supervisor of his injury, and for four weeks he received medical care from a physician of his own choice. July 20, 1957, he returned to the job and performed light duties assigned to him until July 29 when he left Harrison Brothers permanently to receive additional medical care. August 12 his doctor discharged him with the advice that he would be physically able to return to regular duty September 3, 1957. During the following months Holland worked sporadically as a service station attendant, but he worked a total of only seven weeks at that job, and continuing pain in his back forced him to abandon it altogether in February, 1958. Harrison Brothers made voluntary payments under the Alabama State Compensation Law of $245 to cover the periods from June 20 to July 19 and July 30 to August 31 and also paid certain medical expenses incurred by Holland. The Deputy Commissioner's award credited the appellee for these payments.
 
 
 4
 The Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 903, requires an employer to make compensation payments irrespective of fault "in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law." 33 U.S.C.A. § 905 provides that if a remedy is available to an injured worker under the Act that remedy shall be exclusive. 33 U.S.C.A. § 908 establishes a schedule of compensation payments which in the case of a total disability sets the benefits at two-thirds of the employee's previous regular wage. The Alabama Compensation Law, Section 279 of Title 26, sets total disability payments at fifty-five per cent of the worker's previous regular wages and limits these payments to 300 weeks. Holland, seeking to obtain the more liberal compensation provided by the federal act, argues that the express provision for coverage of injuries occurring on dry docks naturally includes also injuries occurring on land immediately adjacent to the dry docks. Harrison Brothers counters that when a worker is injured with both feet planted on dry earth there is no federal coverage, regardless of whether he may be standing at the water's edge or near a dry dock. We conclude that this case falls within the "twilight zone" and that the Deputy Commissioner could properly find that Holland was entitled to relief under the Longshoremen's Act.
 
 
 5
 The tortured history of the division between state and admiralty jurisdiction with regard to workmen's compensation claims has been described fully.[1] We advert to it only briefly. The most recent decision is Calbeck v. Travelers Ins. Co., 82 S.Ct. 1196, reversing Travelers Ins. Co. v. Calbeck, 5 Cir., 1961, 293 F.2d 52. The source of many of the difficulties is of course Southern Pacific Company v. Jensen, 1917, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086. In Jensen a longshoreman sustained an injury on a gangplank between a ship and a wharf. The Court held that state compensation laws could not apply to maritime injuries since that would violate the requirement of uniformity implicit in the constitutional grant of authority over maritime law to Congress and to the federal courts. In response to Jensen, Congress in 1927 passed the Longshoremen's Act designed to provide relief to workers injured in cases beyond the reach of state protection.
 
 
 6
 Although the Act chartered a course for thousands of workers, many weary and frustrated litigants were unable to navigate the legal complexities of state and maritime jurisdiction, misjudged their course, and pursued the wrong remedy until after prescription had barred appropriate relief. In 1942 the Supreme Court, in part at least to reduce such instances of hardship,[2] recognized a "twilight zone" embracing cases involving mixed elements of land and maritime jurisdiction where an appellate court would leave to the fact-finder the decision whether jurisdiction existed for the remedy sought. Davis v. Department of Labor and Industries of Washington, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L.Ed. 246. In Davis a structural steel worker engaged in dismantling a bridge across a navigable river was stowing dismantled steel in a barge when he fell from the barge and was drowned. Discussing the case in Calbeck, the Court said:
 
 
 7
 "The result was not predicated on the ground that the employment was `maritime but local,' and so outside the coverage of the Longshoremen's Act. Rather the Court viewed the case as in a `twilight zone' where the applicability of state law was `extremely difficult' to determine, and resolved the doubt, of course, in favor of the constitutionality of the application of state law. At the same time, the Court indicated that compensation might also have been sought under the Longshoremen's Act and that an award under that Act in the very same circumstances would have been supportable, pointing out that the Act adopts `the Jensen line of demarcation.' 317 U.S., at 256, 62 S.Ct. 225. The conclusion that the Longshoremen's Act might have applied without regard to whether the situation might be `maritime but local' plainly implies a rejection of any reading of § 3(a) to exclude coverage in such situation." 82 S.Ct. 1196.
 
 
 8
 After Davis, two per curiam decisions indicated that the Supreme Court intended the "twilight zone" "to include within a wide circle of doubt all waterfront cases involving aspects pertaining both to the land and to the sea where a reasonable argument can be made either way." Moore's Case, 1948, 323 Mass. 162, 80 N.E.2d 478, 481, aff'd, Bethlehem Steel Co. v. Moore, 1948, 335 U.S. 874, 69 S.Ct. 239, 93 L.Ed. 417 and Baskin v. Industrial Acc. Comm., 1950, 340 U.S. 886, 71 S.Ct. 204, 95 L.Ed. 643. A more recent Supreme Court decision confirms the twilight zone doctrine and the fact that as to cases within the twilight zone the injured worker is to have an outright election which remedy he wishes to seek. Hahn v. Ross Island Sand & Gravel Co., 1959, 358 U.S. 272, 79 S.Ct. 266, 3 L.Ed.2d 292. This doctrine does not give every injured water front worker freedom to choose the more generous compensation statute. Where admiralty jurisdiction is clearly present the federal remedy is mandatory. Flowers v. Travelers Ins. Co., 5 Cir., 1958, 258 F.2d 220, cert. denied, 359 U.S. 920, 79 S.Ct. 591, 3 L.Ed.2d 582; Noah v. Liberty Mut. Ins. Co., 5 Cir., 1959, 267 F.2d 218. And when there is a total absence of admiralty jurisdiction the worker must of course seek relief under the state law. But when the case is on the borderline the worker is entitled to seek relief under either his state law or the federal law, and we must affirm a finding by the Deputy Commissioner that jurisdiction exists for an award under the Longshoremen's Act.[3]
 
 
 9
 This case is on the borderline. On several occasions this Court has held that a marine railway is a dry dock within the meaning of 33 U.S.C.A. § 903. Avondale Marine Ways v. Henderson, 5 Cir., 1953, 201 F.2d 437, aff'd per curiam, 1953, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77; Continental Casualty Co. v. Lawson, 5 Cir., 1933, 64 F.2d 802. The Supreme Court commented on the Avondale case in its Calbeck decision:
 
 
 10
 "The issue in Avondale Marine Ways, Inc., v. Henderson, 346 U.S. 366, 74 S.Ct. 100, 98 L.Ed. 77, was whether compensation was available under the Longshoremen's Act for the death of an employee killed while engaged in the repair of a vessel which was then physically located on land, but on a marine railway. Since a marine railway was considered to be a `dry dock,' the injury satisfied § 3(a)'s requirement that it occur `on navigable waters,' defined in § 3 as `including any dry dock.' At the same time, since the injury did, in a physical sense, occur on land, there is little doubt that a state compensation act could validly have been applied to it. See State Industrial Commission of State of New York v. Nordenholt Corp., 259 U.S. 263, 42 S.Ct. 473, 66 L.Ed. 933. Nevertheless, this Court affirmed an award of compensation under the Federal Act in a per curiam opinion." 82 S.Ct. 1196.
 
 
 11
 It seems reasonable to us that any meaningful definition of marine railway should include the land immediately adjacent to the tracks that is beneath a ship drawn up on the railway and that must be used in the course of repairing any ship on the railway. This argument draws strength from the fact that the general assignment Holland was performing was of a basically maritime nature.[4] It might also be argued, however, that the extension of admiralty jurisdiction to include dry docks is in the nature of an infringement on land jurisdiction and should not be extended to include any land at all except that actually supporting the marine railway. In short, this was a doubtful case. It falls within the twilight zone.
 
 
 12
 Before Calbeck the argument might have been made that when a worker injured within the twilight zone obtains relief under either the state law or the Longshoremen's Act he forfeits his "twilight right" to seek relief under the other law. Calbeck holds that:
 
 
 13
 "[T]he acceptance of the payments does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act. Nothing in the statute requires a contrary result. And we agree that the circumstances do not support a finding of a binding election to look solely to the state law for recovery. Massachusetts Bonding & Insurance Co. v. Lawson, 5 Cir., 149 F.2d 853; Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968; Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409." 82 S.Ct. 1196.
 
 
 14
 As a matter of doctrinal conformity to the exclusiveness of remedy directed by the Longshoremen's Act, there is neither a binding agreement by the parties nor a determination by judicial or administrative authority that fixes state or maritime jurisdiction. As a matter of practical fairness, the employer is not put to any undue expense or other hardship by permission of this suit. Until the claim is litigated once or settled by a binding compromise agreement, the employee has not received a complete compensation and the employer could make no objection to a suit by the injured worker under Alabama law. The claimant's action in bringing suit instead under the federal law does not subject the employer to any additional burden. An award under either compensation law would of course credit the employer with any voluntary payments he had already made. Mere acceptance by the worker of the voluntary payments will not suffice to commit him to one remedy or the other in limitation of the choice he is entitled to make in a twilight zone case.
 
 The judgment is
 
 15
 Reversed.
 
 
 
 Notes:
 
 
 [1]
 See 2 Larson, The Law of Workmen's Compensation § 89; Gilmore and Black, The Law of Admiralty 333-358 (1957); Rodes, Workmen's Compensation for Maritime Employees: Obscurity in the Twilight Zone, 68 Harv.L.Rev. 637 (1955); Davis v. Department of Labor, 1942, 317 U.S. 249, 63 S.Ct. 225, 87 L. Ed. 246; Parker v. Motor Boat Sales, 1941, 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; State Industrial Commission of New York v. Nordenholt Corp., 1922, 259 U. S. 263, 42 S.Ct. 473, 66 L.Ed. 933; Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397
 
 
 [2]
 In Davis, supra, 317 U.S. at 253-254, 63 S.Ct. at 227 the Court stated, "Harbor workers and longshoremen employed `in whole or in part upon the navigable waters' are clearly protected by this Federal Act; but employees such as decedent here, occupy that shadowy area within which, at some undefined and undefinable point, state laws can validly provide compensation. This Court has been unable to give any guiding, definite rule to determine the extent of state power in advance of litigation, and has held that the margins of state authority must `be determined in view of the surrounding circumstances as cases arise.' * * * The very closeness of the cases * * * has caused much serious confusion. * * * Yet, employees are asked to determine with certainty before bringing their actions that factual question over which courts regularly divide among themselves and within their own membership. As penalty for error, the injured individual may not only suffer serious financial loss through the delay and expense of litigation, but discover that his claim has been barred by the statute of limitations in the proper forum while he was erroneously pursuing it elsewhere." 317 U.S. at 253-254, 63 S.Ct. at 227
 
 
 [3]
 In Davis, supra, 317 U.S. at 256-257, 63 S.Ct. at 229, the Court stated, "There is, in the light of the cases referred to, clearly a twilight zone in which the employees must have their rights determined case by case, and in which particular facts and circumstances are vital elements. That zone includes persons such as the decedent who are, as a matter of actual administration, in fact protected under the state compensation act
 "Faced with this factual problem we must give great — indeed, presumptive — weight to the conclusions of the appropriate federal authorities and to the state statutes themselves. Where there has been a hearing by the federal administrative agency entrusted with broad powers of investigation, fact finding, determination, and award, our task proves easy. * * * Their conclusion that a case falls within the federal jurisdiction is therefore entitled to great weight and will be rejected only in cases of apparent error."
 
 
 [4]
 In determining whether a worker's personal injury claim falls within the federal admiralty jurisdiction or the jurisdiction of the state, courts have regularly looked to both the locality of the accident and the nature of the work being performed. The literal language of the Longshoremen's Act seems to concern only the locality of the accident, but the history of the Act indicates that its underlying purpose was to embrace the admiralty jurisdiction whatever that might be. See Parker v. Motor Boat Sales, Inc., supra, especially 314 U.S. at 249-50, 62 S.Ct. 221, 86 L.Ed. 184. The Supreme Court has frequently confirmed the "general doctrine that in contract matters admiralty jurisdiction depends upon the nature of the transaction and in tort matters upon the locality." Grant Smith-Porter Ship Co. v. Rohde, 1922, 257 U.S. 469, 476, 42 S. Ct. 157, 66 L.Ed. 321. It would seem logical to distinguish between suits based on the fault of the employer (tort) and claims for compensation irrespective of fault (where the employer's statutory responsibility for injuries is in essence incorporated into the contract), and to look to locality to determine jurisdiction in the first group of cases and to the nature of the work in the second. See the articulation of this analysis in the New York state court opinion quoted by the Supreme Court in State Industrial Commission v. Nordenholt Corp., supra, 259 U.S. at 270-73, 42 S.Ct. 473. The Supreme Court reversed the lower court decision in Nordenholt but without an express rejection of this analysis. In point of fact, however, the courts consider both locality and nature whether the claim is based on fault or on statutory liability irrespective of fault. In Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208, the Court buttressed its conclusion that the negligence suit was within the admiralty jurisdiction by the observation that the nature of the claimant's duties was maritime; Chelentis v. Luckenback Steamship Co., 1918, 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171. Correspondingly, note the emphasis in Nordenholt, supra, that the Court attached to locality in deciding that the plaintiff was entitled to relief under the New York compensation statute
 HUTCHESON, Circuit Judge (concurring specially).
 While I have strong reservations with respect to the correctness of the majority decision in Calbeck v. Travelers Insurance Co., 82 S.Ct. 1196, and the decision in this case grounded on it,[1] I have no doubt that the Calbeck case rules the instant case, and I am constrained, therefore, to concur in the opinion and the judgment of reversal.
 Notes:
 
 
 [1]
 Compare the dissenting opinion in Calbeck v. Travelers Ins. Co., supra with Noah v. Liberty Mutual Ins. Co., 265 F. 2d 547 (5th Cir.1959) (Special concurrence)