Fred R. BEASLEY, employer, Petitioner,

v.

Stephen O'HEARNE, Deputy Commissioner, and Goldie L. Ingels, widow of Thomas J. Ingels, deceased employee, Respondents.

Civ. A. No. 2152.

United States District Court
S. D. West Virginia,
Huntington Division.

Feb. 8, 1966.

Paul N. Bowles and F. T. Graff, Jr., Stone, Mauzy, Bowles & Kauffelt, Charleston, W. Va., for petitioner.

Milton J. Ferguson, U. S. Atty., Charleston, W. Va., and George D. Beter, Asst. U. S. Atty., Huntington, W. Va., for respondent Stephen O'Hearne.

Hymen Schlesinger, Pittsburgh, Pa., and David M. Katz, Katz, Katz & Kantor, Bluefield, W. Va., for respondent Goldie L. Ingels.

CHRISTIE, District Judge.

This is an action under 33 U.S.C.A. Section 921 of the Longshoremen's and Harbor Workers' Compensation Act, brought by petitioner, the employer, requesting an injunction restraining the Deputy Commissioner from enforcing an award of death benefits directed to be paid to Goldie L. Ingels, the widow of the deceased, pursuant to an order dated August 6, 1965.

The findings by the Deputy Commissioner in this case are in pertinent part as follows:

"* * * That on the 5th day of March, 1956, Thomas J. Ingels, hereinafter referred to as the decedent, was in the employ of the employer above-named at a coal tipple on the bank of the Ohio River at West Columbia, in the State of West Virginia, in the Ninth Compensation District established under the provisions of the Longshoremen's and Harbor Workers' Compensation Act, and that the liability of the employer under said Act was uninsured; that the decedent and one other employee operated a coal crusher and the coal tipple from which the crushed and cleaned coal was carried on a conveyor belt, which was carried on a boom over the river bank from which the coal fell into a hopper or bunk of a coal barge; that the coal barges, when brought to the tipple for loading, are moored to pilings so that the first hopper or bunk of the first downstream barge is under the conveyor; that the decedent and the other employee attach cables from

shore based winches to the barge so that when the first hopper is loaded the mooring lines are slacked off and the drift of the barge is controlled by the winch, bringing the second hopper under the conveyor; that when loading is completed one of the employer's employees boards the barge, casts off the lines, and under control of the winch the barge or barges drift downriver below the tipple and are tied off to pilings; that access to the barges is by either a fixed ladder or a movable aluminum ladder; that on 5 March, 1956, the decedent, in the performance of his service to the employer, in some manner fell into the waters of the Ohio River and drowned; that at about 11:00 A.M. on 5 March, 1956, the body of the decedent was recovered from the waters of the Ohio River; it is presumed that the claimant fell into the water from the catwalk connecting the piling to the shore, one of the ladders used for access to the barges, or from one of the barges while performing a maritime part of his services; that notice of death was not given within thirty days and that the employer has not been prejudiced by claimant's failure to give notice * * *."

### I

■ The scope of our judicial review has been well documented by the courts. The findings, inferences and interpretations of the Deputy Commissioner are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole. O'Leary v. Brown-Pacific Maxon, 340 U.S. 504, 71. S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual Ins. Co., 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028, or "unless they are irrational." O'Keeffe v. Smith, Hinchman and Grylls Associates, 380 U.S. 359, 85 S.Ct. 1012, 13 L.Ed.2d 895 (1965).

### II

Petitioner, in his complaint, alleges, in effect, that on the basis of the evidence of record before the Deputy Commission-er the death of decedent is not within the coverage provisions of the Longshoremen's Act. In specific, petitioner contends that the fatal injury did not occur upon the navigable waters of the United States.

■ We start with the familiar rule that it shall be presumed, in the absence of substantial evidence to the contrary, that the claim comes within the provisions of the Act. 33 U.S.C.A. Section 920(a). The applicable statutory provision is,

"Section 903, Coverage

"(a) Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any dry dock) * * *." 33 U.S.C.A. 903(a).

The leading authority concerning the interpretation of this statute is Calbeck v. Travelers Insurance Co., 370 U.S. 114, 82 S.Ct. 1196, 8 L.Ed.2d 368 (1962). Discussing this statute, the Supreme Court said,

"There emerges from the complete legislative history a congressional desire for a statute which would provide federal compensation for all injuries to employees on navigable waters;

* * * * * *

"In sum, it appears that the Longshoremen's Act was designed to ensure that a compensation remedy existed for all injuries sustained by employees on navigable waters, and to avoid uncertainty as to the source, state or federal, of that remedy. Section 3(a) should, then, be construed to achieve these purposes."

The apparent effect of the *Calbeck* decision has been to expand the jurisdiction of the Act toward land. Cf. Interlake Steamship Company v. Nielsen, 338 F.2d 879 (6th Cir. 1964).

■ Section 20(a) of the Act, 33 U.S.C.A. 920(a), as previously mentioned, casts a heavy burden on the employer.

**52**

Cf. Marra Bros. v. Cardillo, 154 F.2d 357 (3rd Cir. 1946). This section provides in pertinent part that,

"In any proceeding for the enforcement of a claim for compensation under this Act it shall be presumed, in the absence of evidence to the contrary—(a) That the claim comes within the provisions of this Act * * *."

Here, an examination of the record fails to reveal any evidence to justify a finding that the injury was not sustained upon the navigable waters of the United States, so as to overcome this presumption. The basic facts before the Commissioner were as follows: At the coal tipple site, from the testimony adduced at the hearing, it shows that the piling extends some 20 feet out from the shore and that a barge alongside such piling would extend some 26 feet further out into the Ohio River. The testimony further shows that it was normal procedure in decedent's work for him to go out onto the barge by means of a stairway connected to the barge from the piling, and by means of a portable ladder, he was able to cross from barge to barge. The evidence further shows that on the day of decedent's death, his body was pulled out of the river next to one of these portable ladders. Of further significance is the coroner's report which attributed the principal cause of death to drowning. From these facts, the Commissioner concluded that decedent met his death in the navigable waters of the United States. The Court realizes that the Commissioner, in his findings, did not state with certainty how or where decedent met his death. The death was unwitnessed, thus making it virtually impossible to make definite findings on this point. The Commissioner then, to make his findings, necessarily had to draw certain inferences from the basic facts he had before him. It is immaterial that the facts permit the drawing of different inferences, for the Deputy Commissioner alone is charged with the duty of initially selecting the inference which seems most reasonable and his choice, if

otherwise sustainable, may not be disturbed by a reviewing court. Cardillo v. Liberty Mutual Ins. Co., supra. In view of the statutory presumption calling for coverage under the Act and the circumstances surrounding the case at bar which reveal no evidence to contradict the findings of the Commissioner, we must conclude that his inferences and final conclusion that the injury occurred on the navigable waters of the United States are sustainable and supported by substantial evidence. In accord: Gulf Oil Corporation v. O'Keeffe, 242 F.Supp. 881 (E.D.S.C.1965); Marine Stevedoring Corporation v. Oosting, 238 F.Supp. 78 (E.D.Va.1965). Even if decedent had fallen into the river from a structure firmly attached to land, it would not destroy maritime jurisdiction. Interlake Steamship Company v. Nielsen, supra; Gulf Oil Corporation v. O'Keeffe, supra; Boston Metals Company v. O'Hearne, 329 F.2d 504 (4th Cir. 1964). As stated in the *Interlake* case,

"If Calbeck holds (and we think it does) 'that Congress intended the compensation act to have a coverage co-extensive with the limits of its authority,' then there can be no doubt about the outcome of this appeal. No one asserts that claimant was killed (or injured) until the impact on the frozen substance of the navigable waters at the end of the dock. The fact that impressed the District Judge—that the impetus which propelled claimant onto the ice had a land based-origin—does not alter the fact that the situs of his injury and death was clearly within the scope of admiralty jurisdiction."

### III

Petitioner further contends that even if decedent's death were in the navigable waters of the United States, he was not engaged in maritime employment so as to come within the coverage of the Act. There is no merit, however, in this contention. The record reveals from the testimony of Mr. Beas-

ley, the employer, that decedent was on the company payroll on March 5, 1956. Mr. Raymond Cuckler, general manager, testified that decedent was working at the coal tipple site during his employment with the company. The Commissioner, therefore, found by inference that on March 5, 1956, decedent was in performance of his service to his employer. Again, there being no evidence to the contrary, we must hold the Commissioner's findings based on the above-mentioned facts are supported by substantial evidence. But did decedent's employment at the coal tipple constitute maritime employment? Employer, as defined in the Act, means,

"(4) The term 'employer' means an employer any of whose employees are employed in maritime employment, in whole or in part, upon the navigable waters of the United States (including any dry dock.)" 33 U.S.C.A. 902.

Thus, it is sufficient for coverage under the Act if decedent's duties only in part involved maritime employment. Mr. Cuckler testified that decedent's duties on March 5, 1956, were,

"To clean, prepare and load the barges at the tipple, clean and prepare the coal, put it on the barges."

Loading and unloading cargo is the precise employment described in the Longshoremen's Act. Noah v. Liberty Mutual Insurance Co., 267 F.2d 218 (5th Cir. 1959); Flowers v. Travelers Insurance Co., 258 F.2d 220 (5th Cir. 1958); The Admiral Peoples, 295 U.S. 649, 55 S.Ct. 885, 79 L.Ed. 1633 (1935); Bryer v. Erie R. Co., 1 Misc.2d 422, 145 N.Y.S.2d 847. As respects jurisdiction under this chapter, management of a vessel, loading thereof, care of its equipment and cargo, and performance of any task essential to enable it to accomplish its purpose on navigable waters are within the term "maritime employment." Massman Const. Co. v. Bassett, 30 F.Supp. 813 (D.C.Mo.1940). Therefore, we must conclude that decedent's duties were maritime in part, thus bringing him within the scope of the Act.

## IV

Petitioner further contends that decedent's widow did not file her claim within the one year statute of limitations. We need not decide this issue because it was not raised or submitted before the Deputy Commissioner at the first hearing. Cf. Bethlehem Steel Co. v. Parker, 163 F.2d 334 (4th Cir. 1947). 33 U.S.C.A. Section 913(a) provides that the right to compensation for death shall be barred unless a claim therefor is filed within one year after the death. Subdivision (b), however, provides,

"Notwithstanding the provisions of subdivision (a) of this section failure to file a claim within the period prescribed in such subdivision shall not be a bar to such right unless objection to such failure is made at the first hearing of such claim in which all parties in interest are given reasonable notice and opportunity to be heard." 33 U.S.C.A. Section 913(b).

From a review of the evidence of record at the first hearing, petitioner did not raise this issue. Furthermore, even if it could be said that petitioner properly objected to the failure of filing of the claim within the prescribed time limit, his contention must fail for an additional reason—the evidence of record fails to reveal that the employer, within ten days from the date of death or from the date he had knowledge thereof, sent to the Secretary of Labor a report setting forth such information as required by the Secretary. 33 U.S.C.A. Section 930(a). The provisions of this section further provide that,

"Where * * * the employer (or his agent in charge of the business in the place where the injury occurred) or the carrier has knowledge, of any injury or death of an employer and fails, neglects, or refuses to file report thereof as required by the provisions of subdivision (a) of this section, the limitations in subdivision (a) of section 913 of this title shall not begin to

run against the claim of the injured employee or his dependents entitled to compensation * * * until such report shall have been furnished as required by the provision of subdivision (a) of this section." 33 U.S.C.A. 930(f).

Since the evidence of record fails to reveal that any such report was filed by the employer with the Secretary or the Deputy Commissioner, the limitations prescribed in Section 913 of the Act did not begin to run.

## V

■ Petitioner lastly contends that the Act is not available since a state compensation remedy has been constitutionally provided. Petitioner relies on 33 U.S.C.A. 903, which provides,

"Compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from injury occurring upon the navigable waters of the United States * * * and if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law."

Here, decedent's widow received state compensation benefits from the State of Ohio in regard to decedent's death in the amount of $12,000.00. Consequently, petitioner contends that when decedent's widow accepted payments under the Ohio State Compensation Act, she forfeited her right of obtaining relief under the Federal Act. An identical situation was presented to the Supreme Court in Calbeck v. Travelers Insurance Co. supra. There the Court states,

"(T)he acceptance of the payments does not constitute an election of the remedy under state law precluding recovery under the Longshoremen's Act. Nothing in the statute requires a contrary result. And we agree that the circumstances do not support a finding of a binding election to look solely to the state law for recovery. Massachu-

setts Bonding & Insurance Co. v. Lawson, 5 Cir., 149 F.2d 853; Newport News Shipbuilding & Dry Dock Co. v. O'Hearne, 4 Cir., 192 F.2d 968; Western Boat Building Co. v. O'Leary, 9 Cir., 198 F.2d 409."

As further stated in Holland v. Harrison Bros. Dry Dock and Repair Yard, Inc., 306 F.2d 369 (5th Cir. 1962),

"As a matter of doctrinal conformity to the exclusiveness of remedy directed by the Longshoremen's Act, there is neither a binding agreement by the parties nor a determination by judicial or administrative authority that fixes state or maritime jurisdiction. As a matter of practical fairness, the employer is not put to any undue expense or other hardship by permission of this suit. * * * The claimant's action in bringing suit instead under the federal law does not subject the employer to any additional burden. An award under either compensation law would of course credit the employer with any voluntary payments he had already made. Mere acceptance by the worker of the voluntary payments will not suffice to commit him to one remedy or the other in limitation of the choice he is entitled to make in a twilight zone case."

In this light, therefore, we must hold that the State Compensation Act does not bar decedent's widow from bringing suit under the Federal Act.

Viewed as a whole, we find that there is substantial evidence of record to support the Deputy Commissioner's findings.

## ORDER

For the reasons appearing in the foregoing opinion, it is

Ordered:

(1) That the Motion for Summary Judgment of the petitioner, Fred R. Beasley, to set aside or otherwise nullify the Compensation Order of August 6, 1965, be, and it is, hereby denied; and

(2) That the separate Motions for Summary Judgment of the respondents,

Stephen O'Hearne, Deputy Commissioner, and Goldie L. Ingels, widow of Thomas J. Ingels, decedent, for affirmance of the said Compensation Order be, and they are, hereby respectively granted.