**PUGET SOUND BRIDGE & DRY DOCK COMPANY, a Nevada corporation (now known as Lockheed Shipbuilding and Construction Company) and Employers Mutual Liability Insurance Company of Wisconsin, a Wisconsin corporation, Plaintiffs,**

v.

**J. J. O'LEARY, as Deputy Commissioner, Bureau of Employees Compensation, United States Department of Labor, and Marion C. Keohookalani, Defendants.**

No. 6552.

United States District Court
W. D. Washington, N. D.

Jan. 13, 1966.

Order Amending Memorandum Opinion
Feb. 1, 1966.

Alec W. Brindle and Walsh & Margolis, Seattle, Wash., for plaintiffs.

William N. Goodwin, U. S. Atty., Seattle, Wash., Michael Hoff, Asst. U. S. Atty., Leavenworth Colby, Special Asst. to the Atty. Gen., Washington, D. C., for defendants.

MEMORANDUM
OPINION

LINDBERG, Chief Judge.

This action was filed on September 22, 1965 by plaintiffs under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 921, to enjoin and set aside a compensation order issued by defendant Deputy Commissioner as not in accordance with law. On October 20, 1965 plaintiffs filed a motion for interlocutory injunction pending final determination of its appeal, alleging irreparable injury. While the motion was noted for argument for November 1, 1965 it was continued until November 15, 1965 because of my absence from the district and thereafter continued upon request until November 29, 1965. After submission of briefs and oral argument I orally announced my opinion that the motion was without merit because of failure to show irreparable injury. However, entry of an order denying said motion was delayed inasmuch as the Deputy Commissioner prior to November 29, 1965—the date of hearing of the motion—had filed an answer and counterclaim for declaratory judgment and it appeared advisable to continue the hearing for a short time and dispose of the case on its merits after a hearing on all issues. Furthermore, the briefs submitted by counsel for plaintiffs and the defendant Deputy Commissioner, as well as oral argument, reviewed the merits of the case, with plaintiffs urging lack of jurisdiction by the Commissioner and the necessity of a de novo hearing by the court to determine the issue of jurisdiction.

The hearing was continued to December 13, 1965 at 1:30 o'clock p. m. Plaintiffs filed a motion for a trial de novo supported by a memorandum, and the Deputy Commissioner responded with a memoradum in opposition. The case was argued on all issues and submitted for decision.

The first question to be considered is whether, as plaintiffs contend, the court is required under the facts and circum-

stances of this case, to grant a hearing de novo to determine the jurisdictional facts.

■ As support for this argument the plaintiffs cite Crowell v. Benson (1932) 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598. This case was decided before the passage of the Administrative Procedures Act (1946), and since the passage of that Act the case trend has indicated a different standard of review than that laid down in Crowell. See O'Leary v. Brown-Pacific-Maxon (1951) 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483. If the Deputy Commissioner's findings of fact, including the ones upon which jurisdiction is predicated, are supported by substantial evidence in the record as a whole, they are to be upheld. This is the standard set forth in the Administrative Procedures Act, sections 1007(b) and 1009(e). It is also the standard of review that has been specifically adopted by this circuit. Morrison-Knudsen Co. v. O'Leary (9 Cir. 1961) 288 F.2d 542. In that case the court stated:

"Thus it can be said that as far as this Circuit is concerned the rule laid down in Crowell v. Benson, 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598, has been limited and interpreted so as not to require a trial de novo as a matter of right under circumstances where there is no real issue of fact presented." (Id. at 543)

An examination of the record is necessary to ascertain if there is a real issue of fact here.

The following pertinent facts appear undisputed. Joseph Keohookalani, the deceased worker, was employed by the plaintiff company as a rigger for a traveling crane. He rode in the cab of the crane and assisted the crane operator in attaching the crane's lift mechanism to various loads. On November 13, 1964, the day of his death, Mr. Keohookalani and the crane operator were unloading a barge anchored alongside the pier upon which the crane was situated. They had attached a load and were in the process of lifting it when the crane—apparently from an excessive load—began to fall towards the water. After the cab of the crane hit the water the crane operator managed to free himself and was rescued. Mr. Keohookalani, however, was unable to escape. Approximately one hour later his body was recovered and he was pronounced dead.

Dr. Harold Eggers performed the autopsy. It showed that the dead man had received a basal skull fracture sometime previous to his death. Water was found in his lungs, a clear indication that he was alive when he entered the water. On the certificate of death two causes were stated: drowning and a basal skull fracture.

Dr. Eggers' testimony shows that he does not really know how the skull fracture occurred nor when. It was his opinion that it occurred as the crane was falling towards the water. This is just a guess, however. Dr. Eggers was not present when the crane fell, and he admitted under cross-examination that the skull fracture could well have been caused as the crane struck the water. There is nothing in the record which throws the weight of probability towards either view. When and how the fracture occurred is an unknown, pure and simple.

The immediate cause of death is known. It is asphyxia from drowning, as stated in the report. The head injury of the deceased undoubtedly contributed to his helplessness in the water, but he nonetheless drowned in Elliott Bay.

Based upon these facts, the Deputy Commissioner concluded that jurisdiction existed and compensation under the statute was proper. Implicit in this conclusion is the Deputy Commissioner's belief that death arose out of an injury occurring upon the navigable waters of the United States. Other than the hopeful speculations of the plaintiffs there is nothing in the record which is inconsistent with this finding.

The plaintiffs attack the finding by resorting to specious logic. The argument is that since the crane was on the land (the pier being so construed) and

fell from the land into the water, the injury must have occurred on the land. I don't think this follows at all; and it has no support in the stipulated record of facts. Perhaps it *could have* happened as plaintiffs contend; but it also *could have,* and probably did, happen when the cab of the crane hit the waters of Elliott Bay and thereafter.

 To rule in plaintiffs' favor this court would have to (1) ignore the drowning aspect completely; (2) find the primary cause of death was skull fracture; (3) find that the Deputy Commissioner's implied finding of head injury as the crane struck the water is "clearly erroneous"; and (4) substitute its own finding that the fracture was caused while the crane was still toppling —all this to be done even though the evidence supporting the substituted finding is less cogent than that supporting the Deputy Commissioner's finding.

It is my conclusion that the undisputed facts as outlined above, as well as all reasonable inferences to be made therefrom, establish that there is no real issue as to jurisdictional facts that would require a trial de novo by the court.

The next question is whether his finding of jurisdiction is erroneous as a matter of law. I conclude that it is not.

 If employment at the time of death involves some aspect of maritime activity, drowning in navigable water alone is sufficient to bring the deceased person within the protection of the Act. See Parker v. Motor Boat Sales (1941) 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184. Moreover, as stated in Wilson v. Transocean Airlines (N.D.Cal.1954) 121 F. Supp. 85 at p. 92, "Admiralty tort jurisdiction has never depended upon the nature of the tort *or how it came about,* but upon the locality where it occurred." (Emphasis added.) Cf. Atlantic Transport Co. of West Virginia v. Imbrovek (1914) 234 U.S. 52, 34 S.Ct. 733, 58 L.Ed. 1208. The fact that the deceased was on land when the chain of causation began does not negate admiralty jurisdiction. Interlake Steamship Co. v. Nielson (6 Cir. 1964) 338 F.2d 879 (Car driven off end of dock.); Cf. O'Keeffe v. Atlantic Stevedoring Co., (5 Cir. 1965) 354 F.2d 48. In addition to the foregoing citations there is positive authority that admiralty jurisdiction exists if water is the place where the negligence terminates. Weinstein v. Eastern Airlines, Inc. (3 Cir. 1963) 316 F.2d 758. (Airplane crash into navigable waters.)

Situs of the death upon navigable waters is an adequate basis for maritime jurisdiction, as these authorities indicate. There is no question that Mr. Keohookalani drowned in the waters of Elliott Bay. Therefore, the Deputy Commissioner's finding of admiralty jurisdiction cannot be termed erroneous as a matter of law.

To this point only one estuary to admiralty jurisdiction has been explored, the "locational" one. However, even if the speculations of the plaintiffs were adopted, namely, that the deceased struck his head as the crane was falling, there is still another route to the sea available for use by the Deputy Commissioner. It has been recently opened by the reasoning of the court in the case of Spann v. Lauritzen (3 Cir. 1965) 344 F.2d 204, cert. denied, 382 U.S. 938, 86 S.Ct. 386, 15 L.Ed.2d 348; cf. Huff v. Matson Navigation Co. (9 Cir. 1964) 338 F.2d 205. In *Spann* a longshoreman was standing on the dock operating a completely land-based hopper. A nearby crane was unloading buckets of nitrate from an adjacent ship into the hopper, and the hopper in turn was discharging its contents into trucks. In other words, the hopper was being used as a temporary storage vessel to facilitate the unloading. A sudden discharge from the bucket into the hopper caused the hopper unloading handle to drop unexpectedly and strike the longshoreman who was operating it.

The court found that admiralty jurisdiction existed and allowed recovery for the injuries. It reasoned that the hopper was an "essential instrumentality" for the unloading of the ship; it could not have been expeditiously unloaded without using the hopper. Following the broad

language of Seas Shipping Co. v. Sieracki (1946) 328 U.S. 85, 66 S.Ct. 872, 90 L. Ed. 1099 and Reed v. The Yaka (1963) 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448, the court felt that men engaged in servicing a ship were entitled to protection from unseaworthiness. Modern and more expeditious methods of performing these traditional stevedoring functions should not bar them from benefits historically accorded those who practice the calling of seamanship.

If the reasoning of *Spann* is adopted the deceased in the present case was also within the sphere of protection. Even though he might have been on shore when the fracture occurred he was servicing a vessel (the barge) and the use of the crane to perform the unloading would not put him outside the scope of compensation.

Therefore, even if we accepted the plaintiffs' skull fracture theory the Deputy Commissioner's jurisdictional finding still cannot be called erroneous as a matter of law.

It is practically Hornbook law that if the Deputy Commissioner's findings are supported by substantial evidence they will be upheld, unless erroneous as a matter of law. See O'Leary v. Puget Sound Bridge & Dry Dock Co. (9 Cir. 1965) 349 F.2d 571. From the foregoing discussion it is clear that the Deputy Commissioner's findings as to all factual issues are amply supported by the record evidence. They will therefore not be set aside. Nor, as I have indicated, are his findings erroneous as a matter of law. I find that the Deputy Commissioner's determinations on these issues must be affirmed in full.

■ The plaintiffs have also argued that Mrs. Keohookalani, by accepting benefits under a state compensation act, has estopped herself from compensation eligibility under federal law. Acceptance of the prior state award in her favor does not estop her from recovery of the additional benefits payable under the Longshoremen's Act. See Western Boat Building Co. v. O'Leary (9 Cir. 1952) 198

F.2d 409, 411. It only involves crediting the employer with the net amount paid or which might be paid under the state act, in accordance with the provisions of § 914(k) of the Longshoremen's and Harbor Workers' Compensation Act.

Res adjudicata or estoppel is not applicable. Within the twilight zone of overlapping dual state and federal jurisdiction, the determination by a state agency that its compensation act applies to the death is not necessarily inconsistent with a determination by the federal Deputy Commissioner that the death is also governed by the Longshoremen's Act. See Dixie Sand & Gravel Corp. v. Holland (6 Cir. 1958) 255 F.2d 304.

Furthermore, the acceptance of benefits by the widow under the Washington State Compensation Act will not suffice to commit her to one remedy or the other in limitation of the choice she is entitled to make in a twilight zone case such as this. Holland v. Harrison Bros. Dry Dock and Repair Yard, Inc. (5 Cir. 1962) 306 F.2d 369.

■ Although it has been held that the Deputy Commissioner is empowered by the Act (section 914(k)) to allow credit for any payments made—Lawson v. Standard Dredging Co. (5 Cir. 1943) 134 F.2d 771—I can find no statutory authority permitting him to order repayment by the plaintiffs to the state. Indeed, the defendants do not cite any. The Deputy Commissioner argues that the "common-sense of the solution is self-evidence (sic)." However, the federal government is under no obligation to safeguard the interest of the State of Washington. It is perfectly capable of protecting itself, and federal intrusion into its affairs, although intended as a courtesy, could even be considered as intermeddling. The Deputy Commissioner, in ordering repayment to the state, acted out of administrative largesse and in excess of his statutory authority. This portion of his order is therefore set aside; and the order is modified to the extent that the employer shall be allowed a credit equal to the amount of further state

benefits, if any, which may be paid; in all other respects it is affirmed.

This court's determination that the Deputy Commissioner was not empowered to order repayment to the state does not, of course, operate as any adjudication of the merits as far as the state is concerned. The state is not before the court as a party and the question of its rights or obligations is not at issue here.

An order in accordance with this opinion may be presented by the defendants upon notice not later than January 21, 1966 at 9:30 o'clock a. m.